T.C. Memo. 2016-158

UNITED STATES TAX COURT

ARMANDO ADAMES RIVAS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8157-15.                          Filed August 22, 2016.

Armando Adames Rivas, pro se.

Alexander N. Martini, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  This case is before the Court on cross-motions for summary judgment under Rule 121.[1]  With respect to petitioner's Federal income tax for 2011 and 2013, the Internal Revenue Service (IRS or respondent) determined deficiencies, additions to tax, and penalties as follows:

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2011 | $19,634 | $3,927 | $3,927 |
| 2013 | 16,004 | 1,600 | 3,201 |

With respect to the deficiencies, the questions presented are whether petitioner failed to report certain items of income; whether he is entitled to business expense deductions; and whether he is entitled to dependency exemption deductions for certain children. Concluding as we do that all issues must be resolved in respondent's favor, we will grant his motion for summary judgment and deny petitioner's.

Background

The following facts are derived from the parties' pleadings and motion papers, including the affidavits and exhibits attached thereto. See Rule 121(b). Petitioner resided in Florida when he petitioned this Court.

Petitioner filed delinquent returns for 2011 and 2013 on July 26, 2012, and May 23, 2014, respectively. The IRS selected both returns for examination. On March 13, 2015, the IRS sent petitioner a timely notice of deficiency determining deficiencies in tax, additions to tax for late filing, and accuracy-related penalties in the amounts shown above.

[*3]  Two of the adjustments involved unreported income.  For 2011 the IRS determined that petitioner had cancellation of indebtedness income of $25,287 as reported on a Form 1099-C, Cancellation of Debt, issued by JP Morgan Chase Bank. The IRS determined that the discharged debt did not relate to petitioner's principal residence and that he "ha[d] not verified that [he] met the criteria for insolvency as claimed."  For 2013 the IRS determined that petitioner had unreported gambling winnings of $10,000 as reported to the IRS on a Form W2-G, Certain Gambling Winnings.  The IRS included this amount in petitioner's gross income because he "did not verify that this income was inadvertently added to the gross receipts amount [for his sole proprietorship business] as claimed."

For each year at issue petitioner included in his return a Schedule C, Profit or Loss from Business, reporting income and expenses of a consulting business called Global Business Financial Investments (GBFI).  (Although GBFI was apparently an S corporation, petitioner treated it as a sole proprietorship on both tax returns.)  He reported on these Schedules C net profit and loss as follows:

| Item | 2011 | 2013 |
|---|---|---|
| Gross receipts | $75,000 | $75,600 |
| Business expenses | 69,275 | 75,763 |
| Home-office expense | 5,725 | -0- |
| Net profit | -0- | (163) |

[*4] Petitioner reported no wages or other income on either return. He thus reported zero taxable income for 2011 and a loss of $163 for 2013.

Of the Schedule C deductions petitioner claimed, the notice of deficiency disallowed the following for lack of substantiation:

| Expense | 2011 | 2013 |
|---------|------|------|
| Advertising | $24,630 | $28,652 |
| Travel | 12,000 | --- |
| Car & truck | 12,723 | 9,554 |
| Utilities | --- | 15,700 |
| Home office | 5,725 | --- |
| Total disallowed | 55,078 | 53,906 |

As a corollary of these adjustments, the IRS determined that petitioner was liable for self-employment tax of $6,765 and $7,594 for 2011 and 2013, respectively, and that he was entitled to corresponding deductions under section 164(f) (allowing as a deduction "an amount equal to one-half of the taxes imposed by section 1401").

For 2013 petitioner claimed personal exemption deductions under section 151 for himself and four children. The notice of deficiency disallowed the dependency exemption deductions claimed for the children "since another taxpayer has also claimed these dependents on his/her tax return." As a corollary of this deter-

[*5] mination, the IRS determined that petitioner was not entitled to head-of-household filing status.

Petitioner timely petitioned this Court on March 25, 2015. In his petition he did not assign error with respect to either item of unreported income, with respect to any of the disallowed Schedule C deductions, or with respect to the disallowed dependency exemption deductions for the children. He asserted vaguely: "I lost over $500,000 in my business and have my legal rights to write it off." Although he did not claim a net operating loss deduction on either tax return, he asserted: "I have evidence of my losses that by law I can write off as losses and carry over." He did not allege when or how the supposed losses occurred. He asserted that the IRS examining agent "was very arrogant and bossy" and that "this is a complete shake-down by the IRS."

On May 29, 2015, petitioner filed a document captioned "Motion to Strike Respondent Affirmative Answers and Demanding Admissions." He asserted that the examination of his tax returns was an "illegal shake-down by the IRS [and] corrupted and unconstitutional behavior toward petitioner." He again alleged, without any specificity, that he had lost more than $500,000 on real estate and other investments and that he was "legally able to write off and carry the losses over." We denied that motion without prejudice.

[*6]  One month later, petitioner filed a motion virtually identical to the motion he had filed on May 29, continuing to assert frivolous arguments and maintaining his right to deduct unspecified losses.  We denied that motion on July 29.  Petitioner filed a motion for reconsideration that same day, asserting that the denial of his motion violated the Due Process Clause.  We denied that motion on August 3, 2015.  Petitioner filed on August 26 another motion identical to the first two; we denied that motion on September 17.

In August 2015 petitioner filed amended returns for 2011 and 2013.  On the amended 2011 return he admitted receiving cancellation of indebtedness income of $25,287.  He offset this income by claiming a loss of $5,564 on Schedule F, Profit or Loss from Farming, and a loss of $24,630 on Schedule E, Supplemental Income or Loss.  (The $24,630 loss reported on that Schedule E was identical in dollar amount to the advertising expenses claimed on his Schedule C.)  The IRS rejected both amended returns.

On March 25, 2016, petitioner filed a document captioned "Initial Brief and Facts," alleging (among other things) that the IRS "was acting illegally and was shaking me down and wanting to tax me on debts that were forgiven."  On March 29 we ordered that document stricken from the record because it improperly included evidentiary material.  We noted that petitioner's statements resembled those

[*7] appearing in the four motions he had filed previously and warned him as follows:

> The Court regards some of these statements as frivolous, including assertions that the Internal Revenue Service is a "corrupt" agency, that the IRS examining agent was conducting a "shake down," and that the IRS examination violates petitioner's due process rights under the Fifth and Fourteenth Amendments. Petitioner is advised that the Court is authorized to impose a penalty, in an amount up to $25,000, if it appears to the Court that "the taxpayer's position in [this] proceeding is frivolous or groundless" or that the taxpayer has maintained the proceeding "primarily for delay." I.R.C. sec. 6673(a)(1). The Court advises petitioner to refrain from advancing frivolous contentions in further proceedings before this Court.

The parties filed cross-motions for summary judgment on March 30, 2016. Respondent attached as exhibits to his motion copies of petitioner's tax returns and account transcripts for 2011 and 2013. Petitioner attached as exhibits to his motion copies of his amended 2011 and 2013 returns and an IRS request for substantiation of his reported Schedule C expenses.

On April 4, 2016, this Court ordered each party to file a response to the opposing party's motion for summary judgment. Respondent filed his response on April 19, 2016. Petitioner filed his response on April 21, 2016. He there admitted that he had "received gambling winnings in the amount of $10,000 for year 2013." He attached documents from a Florida family court ordering him to pay child support and maintain insurance for his children but no documentation relevant to his

[*8] eligibility to claim the children as his dependents. He attached no documentation relevant to the disallowed Schedule C deductions. He reiterated his assertions that the IRS was engaged in "extortion and criminal action" against him and that IRS' actions "are illegal and frivolous and are part of the retaliation by certain enemies who are using the IRS to target me." He again alleged, without specificity or supporting documentation, that he "lost in excess of $500,000 due to the unpunished crimes of Banksters and wall street who defrauded me out of my wealth."

## Discussion

### A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Either party may move for summary judgment upon all or part of the legal issues in controversy. Rule 121(a). A motion for summary judgment will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand

[*9] Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

Although petitioner has filed a great deal of paper, he has set forth no specific facts showing that there is a genuine dispute for trial on any of the issues raised in the notice of deficiency. Nor has he set forth any specific facts showing that he is entitled to a net operating loss carryforward to 2011 or 2013. We accordingly conclude that this case may be adjudicated summarily under Rule 121(d). See Dawn v. Commissioner, 675 F.2d 1077 (9th Cir. 1982), aff'g T.C. Memo. 1979-479, 39 T.C.M. (CCH) 611.

B.    Unreported Income

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For this presumption to adhere in cases involving receipt of unreported income, respondent must provide some reasonable foundation connecting the taxpayer with the income-producing activity. See, e.g., Blohm v. Commissioner, 994 F.2d 1542, 1549

[*10] (11th Cir. 1993), aff'g T.C. Memo. 1991-636; Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); Tucker v. Commissioner, T.C. Memo. 2014-51, at *12.  Once respondent has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that respondent's determinations are arbitrary or capricious.  Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986).

The notice of deficiency determined two adjustments involving unreported income.  For 2011 the IRS received a Form 1099-C from JPMorgan Chase Bank reporting that it had canceled petitioner's debt of $25,287; this was sufficient to link petitioner with an income-producing activity.  On his 2011 amended return petitioner admitted that he received $25,287 of cancellation of indebtedness income.  The IRS determined that he was not insolvent during 2011, see sec. 108(a)(1)(B), and that the discharged debt was not "qualified principal residence indebtedness," see sec. 108(h).  Petitioner has set forth no specific facts showing that there is a genuine dispute for trial concerning his entitlement to either of these exclusions from gross income.  He has thus failed to prove that the IRS erred by including this $25,287 in income.

[*11] For 2013 the IRS received a Form W2-G reporting that petitioner had earned $10,000 of gambling winnings. In his response to respondent's motion for summary judgment, petitioner admitted that he had "received gambling winnings in the amount of $10,000 for year 2013." Petitioner has not alleged that he had gambling losses that offset his gambling winnings, and he has failed to prove that the IRS erred by including this $10,000 in gross income. We accordingly sustain the IRS' determinations of unreported income as set forth in the notice of deficiency. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Powerstein v. Commissioner, T.C. Memo. 2011-271, 102 T.C.M. (CCH) 497, 506.

C.    Schedule C Expenses

Deductions are a matter of legislative grace. The taxpayer bears the burden of proving that claimed business expenses were actually incurred and were "ordinary and necessary." Sec. 162(a); Rule 142(a). The taxpayer also bears the burden of substantiating his claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 6001; INDOPCO v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily

- 12 -

[*12] against a taxpayer's attempted proof.  Rogers v. Commissioner, T.C. Memo.
2014-141, at *17.

Petitioner has set forth no specific facts concerning, and he has provided no
documentation to substantiate, his claimed deductions for home office expenses
($5,725 for 2011), utilities expenses ($15,700 for 2013), or car and truck expenses
($22,277 in the aggregate).  As to each of these items, his summary judgment pa-
pers do no more than allege that he incurred these costs.

Petitioner has provided no documentation to substantiate his claimed travel
expense ($12,000 for 2011).  His only factual allegation concerning this item is
that "petitioner's business was over 1050 miles round trip and he incurred much
expense in caring for his business."  Travel expenses are subject to heightened
substantiation requirements.  See sec. 274(d).  Petitioner's unsubstantiated asser-
tion does not suffice to create a triable issue of fact concerning his entitlement to a
deduction for travel expenses.

Petitioner has provided no documentation to substantiate the existence or
amount of his claimed advertising expenses ($24,630 for 2011 and $28,652 for
2013).  His only allegation concerning these expenses was that they related to
"horses purchased for business use and the losses"; he attached documents pur-
porting to establish the horses' pedigree.  This unsubstantiated assertion does not

[*13] suffice to create a triable issue of fact concerning his ability to claim horse-related costs as advertising expenses of a financial consulting business. We conclude that petitioner has failed to prove his entitlement to any of the Schedule C deductions that the IRS disallowed.

D.    Net Operating Losses

Petitioner has repeatedly claimed that he suffered "losses of more than $500,000" that he is entitled to carry forward for 2011 and 2013. See sec. 172(a) He did not claim a net operating loss (NOL) on his original return for 2011 or 2013 or on his amended return for either year. See sec. 1.172-1(c), Income Tax Regs. ("Every taxpayer claiming a net operating loss deduction for any taxable year shall file with his return for such year a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction."). At no point in this case has petitioner alleged the precise amounts of the claimed losses or the years in which they were incurred. His characterization of the supposed losses is vague and inconsistent; although he asserted that he "lost over $500,000 in [his] business," other statements suggest that the supposed losses occurred in real estate transactions or in the stock market.

**[\*14]** We conclude that petitioner has failed to allege specific facts sufficient to create a triable issue concerning his entitlement to NOL deductions.

E.      Personal Exemptions and Filing Status

On his 2011 return, but not on his 2013 return, petitioner claimed dependency exemption deductions totaling $14,800 ($3,700 × 4) for his four children. The IRS disallowed these deductions because petitioner's ex-wife had claimed these four children as dependents on her return.

Section 151 provides an exemption from taxable income for each dependent as defined in section 152. Section 152(a) defines a dependent as either a "qualifying child" or a "qualifying relative" of the taxpayer. To be considered a "qualifying child" of the taxpayer, the child must (among other things) have the same principal place of abode as the taxpayer for more than one-half of the taxable year. See sec. 152(c)(1)(B). For a family member to be a "qualifying relative," a taxpayer must show (among other things) that he provided more than 50% of that person's support during the year.

Petitioner has set forth no specific facts concerning, and he has provided no documentation to substantiate, how many days a year the children resided with him or the percentage of their support that he supplied. He has thus failed to carry his burden of proving that any of the children was a "qualifying child" or a

[*15] "qualifying relative." See sec. 152(c)(1)(B), (d)(1)(C) and (D). Nor did he include with his 2011 return a Form 8332, Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent, or a similar signed declaration, by which his ex-wife relinquished her entitlement to claim the children as her dependents. See sec. 152(e)(2). Petitioner has accordingly failed to carry his burden of proving his eligibility to claim any of the children as his dependents.

Petitioner filed his 2011 return claiming head-of-household filing status. To be entitled to this filing status, a taxpayer must maintain a home that "constitutes for more than one-half of such taxable year the principal place of abode" of at least one qualifying child. Sec. 2(b). Since petitioner offered no evidence that he had a "qualifying child" who lived with him during 2011, the IRS properly disallowed his claim to head-of-household filing status.

## F.    Additions to Tax and Penalties

Section 6651 provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. Respondent has the burden of production on this issue. See sec. 7491(c). Respondent satisfied his burden of production by producing petitioner's account transcripts for 2011 and 2013, which

[*16] show that he filed his returns for those years on July 26, 2012, and May 23, 2014, respectively.

A taxpayer who files his return late is liable for this addition to tax unless he shows that his failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985). In his petition, petitioner did not assign error to respondent's determination of an addition to tax for 2011 or for 2013; he has therefore conceded his liability. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358, 358 (2002). In any event, petitioner has set forth no specific facts sufficient to create a triable issue as to whether his late filing was due to reasonable cause.

Section 6662(a) and (b)(2) imposes a 20% penalty upon the portion of any underpayment of tax that is attributable to "[a]ny substantial understatement of income tax." An understatement of tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c) respondent bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

The notice of deficiency determined understatements of income tax of $19,634 for 2011 and $16,004 for 2013, which we have sustained. These amounts

[*17] exceeded the greater of $5,000 or 10% of the total tax required to be shown on each return. Respondent has thus carried his burden of production by demonstrating a substantial understatement of income tax for each year. See sec. 7491(c).

Once respondent has carried his burden of production, the taxpayer bears the burden of proving reasonable cause and good faith. Sec. 6664(c); Higbee, 116 T.C. at 449. Petitioner has set forth no specific facts sufficient to create a triable issue as to whether he had good cause for the underpayments of tax on his 2011 and 2013 returns. We hold that he has failed to carry his burden of proving that he is not liable for the accuracy-related penalties.

## G.    Frivolous Position Penalty

Section 6673(a)(1) authorizes the imposition of a monetary penalty in an amount up to $25,000 whenever it appears to this Court that a taxpayer has instituted or maintained Tax Court proceedings primarily for delay or has taken a position that is "frivolous or groundless." The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial resources. See Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Salzer v. Commissioner, T.C. Memo. 2014-188.

**[*18]** Petitioner has persistently advanced frivolous positions at every stage of this proceeding.  Despite our warning on March 29, he continued to make frivolous arguments in his summary judgment papers.  Although we would be justified in imposing a section 6673 penalty, we will refrain from doing so now.  However, petitioner is admonished not to advance frivolous arguments in any future filings he may make in this Court, because we are unlikely to show leniency next time.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.